IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DANIEL CANEZ and BELINDA CANEZ,**
**personally and as parents of G.S.,**
**a minor child,**

      **Plaintiffs,**

v.                                                              Civil No. 10-1098 BB/ACT

**ALBUQUERQUE PUBLIC SCHOOLS,**
**RAY JARAMILLO, individually and in**
**his official capacity as School Resource**
**Officer, and RUBEN PEREZ, individually**
**and in his official capacity as Principal,**
**Garfield Middle School, APS,**

      **Defendants.**

## Memorandum Opinion and Order

This matter comes before the Court on *APS Defendants' Motion to Dismiss* (Doc 8), filed January 5, 2011. Having considered the submissions of the parties and the applicable law, the Court finds Plaintiffs must exhaust their administrative remedies before proceeding with this action. For that reason, the Motion will be granted and the Complaint will be dismissed without prejudice.

### I. Background

### Allegations of the Complaint

Plaintiffs' *Complaint for Deprivation of Civil Rights (42 U.S.C. § 1983), Violation of the Individuals with Disabilities Education Act (IDEA) and Pendent State Claims* was filed on November 18, 2010. (Doc 1). The Complaint alleges that Plaintiff G.S. "suffers from disabilities . . . and has been classified as a disabled child by Defendant APS." (¶ 3). GS enrolled in Garfield Middle School in the Fall of 2008, and was receiving special education and related services

appropriate for his disabilities. (¶¶ 11-12). These disability include dyslexia, attention deficit disorder, and learning disabilities." (¶ 3). In addition, because of his disabilities, he "sometimes demonstrates impulsive and disruptive behavior at school, but is able to control the behavior when instructed to do so by his teachers." (¶ 12). Three incidents occurred during the 2008-2009 school year which form the basis of Plaintiffs' Complaint.

### First incident

Near the start of the school term GS was involved in a playground fight with another student who had been bullying him. (¶ 13). GS's father, Plaintiff Daniel Canez, attempted to discuss this incident with Defendant Perez, the school's Principal, who was unfriendly, and unwilling to engage in constructive communication concerning GS. (¶ 16). Plaintiffs alleged that Defendant Perez' actions resulted from prejudice based on national origin, Daniel Canez' former gang affiliation, and the "perception that the child takes after the father." (¶ 17).

### Second incident

Later in the school year G.S. was wrongly accused starting a fire in the boy's bathroom at school. (¶¶ 18-20). He was suspended from school for 45 days and arrested for arson. (¶¶ 21-22). Plaintiffs allege that this discipline denied G.S. "the protections for discipline of children with disabilities that are required by the IDEA." (¶22).

### Third incident

On May 9, 2009 G.S. brought a pocketknife with a 1-inch blade to school. (¶¶ 24, 29). The knife was seen by his teacher, who notified school authorities. (¶¶ 25-26). G.S. was again suspended from school. (¶ 26-27). Plaintiffs allege that this discipline was in violation of the IDEA. (¶¶ 27-28). Defendant Perez referred this matter to Defendant Jaramillo, a police officer assigned to the school as a school resource officer. (¶ 33). Defendant Jaramillo interviewed Plaintiffs Daniel

and Belinda Canez on May 11, 2009.  (¶¶ 35, 37).  After they showed him the pocketknife, Defendant Jaramillo arrested G.S. for possession of a deadly weapon.  (¶ 38).  That same day Daniel and Belinda Canez attempted to meet with Defendant Perez to discuss "the child's discipline and criminal charges involving the pocket knife."  (¶ 41).  Defendant Perez refused to meet with them. (¶ 42).  Plaintiffs allege that this refusal violated the IDEA  (¶ 43), and that the discipline and criminal charges resulted from bias and prejudice "because of his disability, race and appearance, and the appearance of his parents."  (¶ 45-46).

G.S. is presently enrolled in a different APS school "in order to avoid the stigma associated with his arrest." (¶¶ 47, 49).   Plaintiffs filed a complaint against APS with  the United States Department of Education Office of Civil Rights[1], which was settled through mediation that preserved their rights to pursue other legal proceedings. [Doc 1, ¶48].

Plaintiffs concede that they have not sought a due process hearing pursuant to 20 U.S.C. § 1415.  They contend that the complaint they filed with United States Department of Education Office of Civil Rights included their IDEA claims, and Defendants waived or forfeited compliance with the exhaustion of remedies requirements under the IDEA.  Alternatively, they argue that if exhaustion of remedies is required, this case should be stayed rather than dismissed.

---

[1] Section 601 of Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  "The Department of Education Office of Civil Rights is responsible for enforcing Title VI, among other civil rights laws, with respect to educational institutions.  The regulations implementing Title VI provide that a person who believes he or she was subjected to discrimination prohibited by Title VI may file a complaint with OCR, which is directed to then investigate the matter." *McLaskey v. La Plata R-II School Dist.*, 364 F.Supp. 2d 1041, 1043-44 (E.D. Mo., 2005) citing 34 C.F.R. § 100.7(b) & ©.

**The IDEA**

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure the rights of children with disabilities and  parents of such children are protected."  20 U.S.C. § 1400(d)(1)(A)-(B).  To implement these goals, Congress mandated that state and local educational agencies receiving assistance under the IDEA establish procedures to ensure the provision of such services and the protection of these rights.  *See id.,* at § 1415(a).  The IDEA requires states to provide the parents of disabled students the right to seek review of any decision concerning their child's education.  *See* 20 U.S.C. § 1415.  Parents have the right to  present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id*. at § 1415(b)(6).   Parents are then entitled to an impartial due process hearing conducted by a state or local educational agency. *See id.,* at 1415(f).  If the hearing is conducted by a local educational agency, the parent is entitled to an appeal to the state educational agency.  *See id.,* at § 1415(g).  The right to bring a civil action accrues to a party aggrieved by the findings and decision made pursuant to an impartial due process hearing.  *See id.,* at § 1415(i)(2)(A).

The purpose of the exhaustion requirement is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of a factual record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors.  *Ass'n for Community Living in Colo. v. Romer,* 992 F.2d 1040, 1044 (10th Cir. 1993).

"As part of the bargain of providing children with educational rights and parents with procedural safeguards to protect those rights, Congress required that parents turn first to the [IDEA's] administrative framework to resolve any conflicts they had with the school's educational services." *Cudjoe ex rel. Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1064 (10th Cir.2002). Suspensions from school are a form of discipline covered by the IDEA. *See* 20 U.S.C. §1415(k).

## Standard of Review

Ordinarily, in deciding a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true, and disregard any information not contained in the Complaint. *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). A different standard applies when the motion is based on a failure to exhaust administrative remedies. In such cases, the Court may consider evidence beyond the pleadings, determine facts, and decide the ultimate issues of whether exhaustion is legally required and, if so, whether it was accomplished satisfactorily. *See, e.g., Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).[2]

---

[2] *Davis* addressed exhaustion of remedies as a jurisdictional question. The Court acknowledges Plaintiffs' contention that failure to exhaust is no longer jurisdictional but rather an affirmative defense that may be waived. Plaintiffs rely on *Jones v. Bock*, 549 U.S. 199 (2007). The Supreme Court in *Bock* decided that under the Prisoner Litigation Reform Act ("PLRA"), failure to exhaust administrative remedies is an affirmative defense that must be raised by a defendant. The Court need not decide whether Plaintiff is correct in this case. It is clear to the Court that, if exhaustion of remedies is not in fact a jurisdictional matter, it is still a question that must be resolved at the outset of the litigation if it has been raised by the defendants, which has occurred in this case. It is undisputed that Plaintiffs did not attempt to exhaust any administrative remedies under the IDEA prior to filing this suit. The only question, therefore, is whether they were legally required to do so. In answer this question the Court has relied solely on the allegations of the complaint or on matters that are undisputed (i.e., Plaintiffs have not availed themselves of the administrative remedies provided in 20 U.S.C. ¶ 1415). Further, neither party has requested an evidentiary hearing to attempt to prove any fact that might be relevant to the inquiry. Therefore, it appears to be irrelevant here whether the exhaustion question is decided as a motion to dismiss or that as a motion that has been converted to a motion for summary judgment. Each party having been given an opportunity to present all information deemed relevant to the question, the requirements of due process have been satisfied.

**Discussion**

"Relief is available [under the IDEA] whenever the plaintiff could attain 'relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers.'" *Ellenberg v. New Mexico Military Institute*, 478 F.3d 1262, 1276 (10th Cir. 2007), *quoting Cudjoe*, 297 F.3d at 1066. Exhaustion of administrative remedies under the IDEA is not required if it would be futile, or would fail to provide adequate relief. *Honig v. Doe,* 484 U.S. 305, 327 (1988), *Cudjoe* 297 F.3d at 1063, n.6. Plaintiffs do not argue that exhaustion in this case would be futile or would fail to provide adequate relief. Their only argument is that they satisfied their duty to exhaust administrative remedies by filing a complaint with the United States Department of Education Office of Civil Rights. Plaintiffs lack legal support for this position.

Plaintiffs must exhaust their administrative remedies. They have clearly alleged injuries to G.S.'s educational interests, including inappropriate suspension, emotional distress and stigmatization. (¶¶ 52, 56, 60). If his alleged injuries could be redressed "to any degree" through the IDEA's administrative procedures and remedies, Plaintiffs must exhaust those remedies. *Padilla v. School Dist. No. 1 in Denver, Colo.,* 233 F.3d 1268, 1274 (10th Cir. 2000). Suspension from school is the type of educational injury that must be adjudicated at the administrative level prior to resort to the courts. *See e.g., Dohmen ex rel. Dohmen v. Twin Rivers Public Schools*, 207 F.Supp. 2d 972, 989 (D. Neb. 2002) (principal injury alleged by student was his expulsion from school; full or partial redress for this injury presumably available through the IDEA procedures). *Franklin v. Frid*, 7 F.Supp. 2d 920, 925 (W.D. Mich. 1998) ("[W]here the alleged acts constitute discipline and not random acts of violence, courts have generally held that claims based upon such conduct fall within the IDEA."); *Cf. Hayes v. Unified School Dist. No. 377*, 877 F.2d 809, 813 (10th Cir. 1989) (In-classroom suspensions and "time-out" periods are forms of discipline that fall within the scope

of 20 U.S.C. § 1415(b)(1)(E)).   In addition, G.S. is still enrolled in the APS school system.  An administrative hearing officer could have ordered APS to provide G.S. with psychological counseling which could, to some extent, relieve the emotional harm he suffered.  *See* 20 U.S.C.A. § 1401(9) and (26) ("free appropriate education" under the IDEA includes "related services, " including psychological services).  Therefore relief for his alleged emotional harm is also available through the IDEA.

Plaintiffs' claim before the United States Department of Education Office of Civil Rights is no substitute for the administrative process provided for in the IDEA.  The IDEA's exhaustion requirement "gives educational professionals, well-versed in a child's educational needs and the range of educational services that could ably meet those needs, 'at least the first crack at formulating a plan to overcome the consequences of education shortfalls.'" *Cudjoe*, 297 F.2d at 1065, *quoting Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7th Cir. 1996).  Requiring exhaustion of the administrative review procedures under the IDEA serves important purposes including:

> (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Hayes,* 877 F.2d at 814.

These purposes can not have been met though the complaint process initiated by Plaintiffs' with the United States Department of Education Office of Civil Rights.

Defendants have not waived compliance with the exhaustion requirements of the IDEA.  They raised the issue in a timely manner by the filing of the instant Motion.

## Conclusion

Based on the foregoing, the motion to dismiss will be granted and this case dismissed without prejudice, to allow Plaintiffs to first pursue their administrative remedies before further litigation is initiated.

_____
BRUCE D. BLACK
United States District Judge